PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* EMETERIO ORTIZ, Defendant and Appellant.

No. 5109. Argued November 21, 1933.—Decided November 29, 1933.

*Juan Valldejuli* for appellant. *R. A. Gómez, Fiscal,* for appellee.

MR. JUSTICE CÓRDOVA DÁVILA delivered the opinion of the Court.

Emeterio Ortiz was convicted of aggravated assault and battery and sentenced to six months in jail and to pay costs. Feeling aggrieved, the defendant has appealed from that judgment, on the grounds that the same is contrary to the evidence, that the offense charged has not been proven, and

that his conviction is the result of a process of bias, prejudice, and passion on the part of the trial judge. Ramón Chárriez, Faustino Correa, and the allegedly assaulted person, Agripina Pagán, testified in this case as witnesses for the prosecution; and Antonio Delgado and the defendant Emeterio Ortiz as witnesses for the defense. The witnesses Ramón Chárriez, Faustino Correa and Antonio Delgado were not present at the time of the occurrence. The judgment of the court below is based on the testimony of Agripina Pagán, who was the only person to testify about the battery charged against Emeterio Ortiz. According to the complaint, the defendant was charged with the offense of aggravated assault and battery. It is alleged therein that the defendant is an adult male and that he, in an unlawful and violent manner, and with the intent to inflict, as he did inflict, great bodily injury on the complainant, did assault and batter her with a leather whip, whipping her twice.

Agripina Pagán substantially testified that she knows Emeterio Ortiz, with whom she lives, and that on August 13, 1932, at night, the witness was in her mother's house and the defendant was waiting for her in the house where they lived; that upon returning to her home the defendant asked her what was she doing at the other place and the witness answered that she was setting the bed for her mother who could not move; that then an argument started between them, they closed the house, and began to fight; that Emeterio Ortiz slapped her face but did nothing more to her; that they fought, that she swore the complaint in the Municipal Court of Yabucoa and that she accused Emeterio Ortiz because he slapped her face, and they began to fight in the house behind closed doors; that he got hold of a chair to hurl at her and when he was about to hurl it she grasped the whip and felt a blow; that the blow was caused by her bumping against a table; that the defendant whipped her on the thigh; that the blow has left no mark on her; that never before had he struck her with a whip; that the defendant hit her on the

thigh when he raised the whip; that there was a cornered table and she bumped against the table and supposed that she had been hit with the whip.

Upon being asked by the judge whether she had not previously told the prosecuting attorney that said blow was caused by the defendant with a whip, she answered: "Yes, but another blow I received was caused by my bumping against the table."

The testimony of the witness ended as follows:

"Prosecuting Attorney: Tell me, madam, did you not testify a little while ago, in answer to my questions, that this man had stricken you with the whip?

"A.—Yes sir, he struck me with the whip; but another bump I had was caused against the table.

"Q.—Then he struck you with the whip and in addition you received that other bump against the table? Answer by word of mouth.

"A.—Yes, sir."

The lower court relied on this evidence to render its judgment convicting Emeterio Ortiz of aggravated assault and battery.

Passion, prejudice, and partiality are attributed to the lower court. This charge is based on the fact that the trial court in rendering its judgment, stated that Agripina Pagán wishing to benefit the defendant as much as possible, did not speak all the truth but only a part thereof which the court believed. Complaint is also made against the remarks of the court, that it was a "serious, very serious offense to assault a woman, and above all to assault her with a whip which is an instrument the use of which involves disgrace for the person assaulted."

The defendant says that the testimony of Agripina Pagán could not have been worthy of belief, and it was not credible since the court itself so declares in its judgment. He adds that the lower court appears to have discovered, by a process of inference, part of the truth of the testimony and that it

is upon this portion of the truth which the court claims to have discovered that the remarks of the court, said to be full of prejudice and bias, are based. In arguing the case before us, counsel for the defendant contended that as the testimony of Agripina Pagán is false in part, it should have been disregarded in its entirety.

It is advisable to observe that the lower court based its judgment on that part of the testimony of Agripina Pagán which it believed to be true, and stated in wishing to benefit the defendant that the witness had not spoken all the truth. The maxim *Falsus in uno, falsus in omnibus* is not applied at the present time with the same rigor as formerly. Wigmore, in referring to this maxim, at page 449 of the second volume of his work on Evidence (2d ed.), says:

"It may be said, once for all, that the maxim is in itself worthless, first, in point of validity, because in one form it merely contains in loose fashion a kernel of truth which no one needs to be told, and in the others it is absolutely false as a maxim of life; and secondly, in point of utility, because it merely tells the jury what they may do in any event, not what they must do or must not do, and therefore it is a superfluous form of words. It is also in practice pernicious, first, because there is frequently a misunderstanding of its proper force, and secondly, because it has become in the hands of many counsel a mere instrument for obtaining new trials upon points wholly unimportant in themselves."

The notion originally associated with this maxim that the testimony of a witness who has testified in part falsely must be rejected in its entirety as being unworthy of belief, does not prevail today. "This notion," says Wigmore, "was quite consistent with the artificial philosophy of testimony which prevailed as late as the 1700s, and was only abolished from the law (long after it had practically lost its social acceptance) as a result of Bentham's pungent criticisms."

On page 450 of the cited work, Wigmore says:

"But in spite of the careless perpetuation of this artificial notion by a few authorities, it had ceased to be the law of England by the

beginning of the 1800s. There are on principle two reasons which exhibit its unsoundness as a rule of law. (1) It is untrue to human nature. It is not correct that a person who tells a single lie is therefore necessarily lying throughout his testimony, not that there is any strong probability that he is so lying. The probability is to the contrary. (2) The jury are the part of the tribunal charged with forming a conclusion as to the truth of the testimony offered. They are absolutely free to believe or not to believe a given witness. Once the witness is determined by the judge to be qualified to speak, the belief of the jury in his utterances rests solely with themselves. Hence the judge cannot legally require them to believe or to disbelieve any portion of testimony."

"The correct principle," adds Wigmore, "can go no farther than to say that the jury may disregard the testimony, not that they must disregard it." In the instant case the lower court weighed the evidence, and believed that the assaulted person, Agripina Pagán, had not stated all the facts, but that she had disclosed enough to produce in the mind of the trial judge the conviction that she had been battered by the defendant with a whip. The offense was characterized as being very serious. The remarks of the judge in pronouncing sentence are not sufficient to justify the conclusion that he acted with passion, prejudice, or partiality, as claimed by the defendant. We must not interfere, either, with the exercise of the court's discretion in imposing the punishment.

The judgment appealed from must be affirmed.